Appeal of **UNITED STATES TRUST COMPANY OF NEW YORK, et al., Executors of FRANCIS S. SMITHERS, deceased.**                    **Docket No. 665.**

1. The Board has jurisdiction of an appeal from a determination of the Commissioner, made subsequent to the enactment of the Revenue Act of 1924, denying a claim in abatement of estate taxes assessed prior to the date of such enactment. *Appeal of Peter Reinberg Estate*, 1 B. T. A. 953, cited and approved.

2. The cancellation by a father of a promissory note in his favor executed by his son, under circumstances set out in this appeal, *held* to have been a transfer *in praesenti*, the possession and enjoyment of which vested immediately in the son and were not postponed to take effect at or after the death of the father.

Submitted February 10, 1925; decided April 29, 1925.

*George W. Wickersham, Esq.*, and *George L. Shearer, Esq.*, for the taxpayer.

*J. F. Greaney, Esq.*, for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This is an appeal from a determination of a deficiency in respect of an estate tax, of which deficiency the taxpayer was notified by the Commissioner in a letter dated November 4, 1924. The proposed additional tax arises under section 402(c) of the Revenue Act of 1918. It is the contention of the Commissioner that the cancellation by the decedent of certain promissory notes executed by the decedent's son, constituted, under the circumstances of the cancellation, a transfer to the son by the decedent to take effect at or after decedent's death and that the value of the notes should be included in the gross estate of decedent. The taxpayer contends that the cancellation of notes referred to did not constitute a transfer to take effect at or after death, but constituted an absolute gift *in praesenti*, and that possession and enjoyment of the gift vested immediately in the son of decedent.

The Commissioner further contends that this Board is without jurisdiction to hear and determine this appeal on the merits, in that the additional tax in controversy was assessed by the Commissioner prior to the enactment of the Revenue Act of 1924, and has filed a motion to dismiss the petition of the taxpayer for want of such jurisdiction. With leave of the Board, the Commissioner, reserving his rights under his motion just referred to, answered to the merits of the petition. At the hearing, argument was had on the motion. The Division reserved decision on the motion and proceeded to hear the appeal on its merits.

### FINDINGS OF FACT.

1. Francis S. Smithers, the decedent, died on November 29, 1919. His executors filed an estate-tax return showing a tax of $313,533.29. A claim in abatement was filed for $2,412.49, due to an error in computation. The balance of the tax shown by the return, $311,120.80, was paid by the executors on January 27, 1921. The claim for abatement of $2,412.49 was allowed by the Commissioner.

2. Upon audit of taxpayer's return, the Commissioner notified the taxpayer by letter dated September 26, 1923, of a proposed additional estate tax in the amount of $203,077.52. This letter advised the taxpayer that assessment of the above-mentioned sum would be made at once. The Commissioner's letter, above referred to, was forwarded to the collector at Brooklyn, N. Y., and was mailed by the collector to the taxpayer, together with a letter from the

collector to the taxpayer, dated September 29, 1923, demanding payment and advising that interest would accrue at the rate of 10 per cent per annum from and after 30 days from the receipt of the collector's letter of September 29, 1923.

3. The additional tax of $203,077.52, above referred to, comprised three items: (a) Certain adjustments in valuations and deductions; (b) a transfer by deed of property valued at $1,149,607.98; and (c) a transaction between decedent and his son whereby $63,000 face value of the son's notes, valued by the Commissioner at par, were canceled. The adjustments referred to in (a) above were not disputed by the taxpayer, and as a result thereof an additional tax of $3,204.89 was paid by taxpayer on November 1, 1923.

4. The collector at Brooklyn, N. Y., listed the additional taxes for assessment on the September, 1923, list on October 15, 1923, and forwarded the list to the Commissioner for his certificate. On October 19, 1923, the taxpayer filed with the collector a claim in abatement for $199,872.63 (that being the amount listed as above stated, $203,077.52, less $3,204.89 not disputed by the taxpayer, as shown above). The amount sought to be abated by the taxpayer's claim comprised the items referred to in items (b) and (c) of paragraph 3 above. The assessment certificate was signed by the Commissioner on November 2, 1923. Taxpayer's claim in abatement was received and entertained by the Commissioner and hearings were had thereon before the Committee on Appeals and Review and before the Solicitor of Internal Revenue. As a result of these hearings the Commissioner determined to allow taxpayer's claim for abatement to the extent of $189,792.64 (the amount of additional tax arising out of item (b) in paragraph 3 above) and to reject it in the amount of $10,079.99 (the amount of additional tax arising out of item (c) in paragraph 3 above). The Commissioner notified the taxpayer of his determination in respect to the rejection of the abatement claim in the amount of $10,079.99 by letter dated November 4, 1924, in which letter the Commissioner said:

In the review of September 26, 1923, the gross estate was determined to be $4,447,542.29, the deductions $154,773.83, and the net estate $4,292,768.46. The adjustment herein made and affecting the gross estate amounts to $1,149,607.98, reducing the total thereof to $3,297,934.31. The deductions are left unchanged. The resultant net estate is accordingly determined to be $3,143,160.48, the tax upon the transfer of which is $324,405.68. As a tax of $311,120.80 was paid on the basis of the return, the estate is liable for additional tax in the sum of $13,284.88. Since the additional tax as determined in review was $203,077.52, the amount thereof is excessive in the sum of $189,792.64. Your claim for abatement of $199,872.63 will, therefore, be prepared for allowance in the sum of $189,792.64, and is rejected as to $10,079.99.

From the determination of the Commissioner, as set out in the letter of November 4, 1924, the taxpayer brings this appeal.

5. The transaction referred to as item (c) of paragraph 3 above, out of which this appeal arises, was the cancellation by the decedent of $63,000 face value of notes of his son, Herbert Smithers, and is set out and evidenced by the following letters:

HOTEL ORMOND,
*Ormond Beach, Florida, February 23, 1919.*

MY DEAR HERBERT: In accordance with our various conversations, this will authorize you to destroy the notes which are in my safety deposit vault, aggregating $288,000 heretofore given by you to me, upon your delivery to F. S.

Smithers & Co. of a note to my order for $225,000 due in 3 years and drawing interest at the rate of 4½% p. a. said interest to accrue from May 1st, 1919, together with an undertaking (in a form approved by Mr. Perry) upon your part to pay me as long as I shall live an annual sum equal to 4½% interest on $63,000.

Your affectionate father,

(Sgd.)      F. S. SMITHERS.

FEBRUARY 26, 1919.

MY DEAR FATHER: I have your letter of the 23rd instant, and the proposition therein contained is quite acceptable to me, and in consideration of the cancellation and destruction of my note for $288,000 which you now hold, I agree to deliver to you at the office of F. S. Smithers & Co. my note to your order for $225,000, due in three years and drawing interest at the rate of 4½% per annum, interest to begin from May 1st, 1919, and I also agree that so long as you live, I will pay you on the first days of each and every September and March in every year the sum of $1,417.50, that being equal to interest on $63,000 at the rate of 4½% per annum.

H. B. SMITHERS.

Approved as to form: JNO. M. PERRY.
To F. S. SMITHERS, ESQ.,
    521 Park Avenue, New York City.

DECISION.

The deficiency determined by the Commissioner is disallowed.

OPINION.

KORNER, *Chairman:* This Board has recently held in *Appeal of Peter Reinberg Estate*, 1 B. T. A. 953, that it has jurisdiction of an appeal from a determination of the Commissioner, made subsequent to the enactment of the Revenue Act of 1924, denying a claim in abatement of estate taxes assessed prior to the date of such enactment. The facts in that appeal relative to the jurisdiction of this Board are substantially on all fours with the facts in the instant appeal. On the authority of that decision the motion of the Commissioner to dismiss the taxpayer's petition herein is denied.

The second question presented by the record in this appeal is whether or not the $63,000, representing the difference between the original obligation of $288,000 owing to Francis S. Smithers by his son and the promissory note executed and delivered by the son to Francis S. Smithers pursuant to the agreement of February 26, 1919, constituted, at the death of Francis S. Smithers, a part of his gross estate within the meaning of section 402 (c) of the Revenue Act of 1918. That part of section 402 (c) of the Revenue Act of 1918 pertinent here is as follows:

SEC. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*       \*       \*       \*       \*       \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or -intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. \*   \*   \*

There is nothing in the record indicating in any way that the transfer under consideration was made in contemplation of death; the

Commissioner concedes that it was not so made. It is therefore only necessary for us to inquire whether or not the transfer was intended to take effect in possession or enjoyment at or after the death of Francis S. Smithers, and, if it was so intended, whether or not it was a bona fide sale for a fair consideration in money or money's worth. Counsel for the taxpayer contend that the transfer was made to take effect in immediate possession and enjoyment, and hence that the value of the interest transferred is not properly to be included in the gross estate of the deceased transferor. The contention of the Commissioner is that the transfer was not a bona fide sale, for a fair consideration in money or money's worth; and that, since the decedent reserved to himself during his life the income from the property, or an annuity equal to interest thereon, the value of the property should be included in the gross estate of the decedent.

Upon a careful consideration of the evidence in this case, in the light of the arguments and briefs of counsel, we are unable to agree with the contention of the Commissioner that the transfer involved here was intended to take effect in possession or enjoyment at or after the death of Francis S. Smithers. We are convinced that this transfer took effect at the time it was made. The evidence shows that H. B. Smithers was indebted to his father in the amount of $288,000, which indebtedness was evidenced by a promissory note. The father, for reasons which are not pertinent here, decided to forego part of his claim against his son, and authorized and directed his son to cancel and destroy the evidence of the debt for $288,000, upon the execution and delivery to him by his son of a new note for $225,000 and an agreement or promise on the part of the son to pay to him, the father, annually, so long as he lived, an amount equal to 4½ per cent of $63,000. Upon the execution of the new note and written agreement, the contract, so far as the father was concerned, was fully executed. On the part of the son, the transfer comprehended in the cancellation of an indebtedness of $63,000 was likewise fully executed. The written agreement of the son to pay certain money to his father was executory in that the son was thereby obligated to pay to his father each year an amount equal to 4½ per cent of $63,000. The son was wholly and completely released from the obligation to pay the principal sum of $63,000. The father no longer had any interest in the principal sum, and, upon failure of the son to make the annual payment provided for in the subsequent agreement, the father would have had no right of action to recover the $63,000 or any part thereof. He would have been limited to an action to collect the amount of the yearly payment provided by the contract of February 26, 1919, if and when such amount accrued under that contract.

In the case of *Levy* v. *Wardell*, 258 U. S. 542, the court had under consideration a transfer of property similar to the transfer involved herein. It was held not subject to tax because it had been made prior to the enactment of the Revenue Act of 1916, under which the tax was sought to be assessed. However, the language used by Mr. Justice McKenna, who delivered the opinion of the court, is enlightening here. He said:

The transfers of the stock to plaintiffs were complete and there were no agreements or stipulations by which Henriette Levy would be entitled to a return of the stock except that the plaintiffs promised and agreed to pay to

her the dividends accruing thereon during her lifetime, she, however, retaining no testamentary disposition or any legal right whatsoever over the stock or any of it, or any right of revocation.

Henriette Levy at the time of the transfers was in good health and made them to get rid of the care and worry of business *and to vest in plaintiffs definite and irrevocable present rights of ownership in the stock,* and the transfers were not in contemplation of, or intended to take effect in possession or enjoyment at or after her death.   (Italics ours.)

The reference to contemplation of death is not germane to this inquiry, but the italicized portion of the above quotation does have a direct bearing here.

The case of *Polk* v. *Miles*, 268 Fed. 175, is saliently in point here. In that case the court was called upon to decide whether or not a transfer by a father to his son of $105,000, in consideration of an agreement by the son to pay to the father during life, 4 per cent interest on the amount transferred, was such a transfer as to enable the estate of the father, on his decease, to eliminate the amount mentioned from the gross estate.   The case arose under section 202(b) of the Revenue Act of 1916, which is identical with section 402(c) of the Revenue Act of 1918, except that the latter section contains the additional words " whether such transfer or trust is made or created before or after the passage of this Act."   The court held that the property transferred did not constitute part of the decedent's gross estate for purposes of the Federal estate tax.   The court said, on page 176:

May the collector of internal revenue sustain his action, on the ground that the transfer made was not intended to take effect in possession or enjoyment until after the husband's death?   There is no question that the son at once entered into possession of the brewery's stock, with whatever enjoyment it was possible to get out of it.   The agreement reserved to the husband no rights in it, and the government has not sought to tax the stock, which was worthless, or nearly so.   The indebtedness had value, provided the business was promptly wound up.   What, if anything, it would be worth, if its collection was postponed until after the death of the husband, no one could then say.   What did the transaction amount to?   Was it anything other than the purchase by the husband from the son of an annuity of nearly $4,200 a year, payable in monthly installments; the buyer paying for it by assigning to the seller his claim against the brewery?   It has been many times held that the vendor of an annuity enters at once into the possession and enjoyment of the price paid for it, which does not, upon the death of the annuitant, figure as part of his estate for taxation purpose.   *Matter of Edgerton,* 35 App. Div. 125, 54 N. Y. Supp. 700, affirmed 158 N. Y. 671, 52 N. E. 1124; *Matter of Thorne,* 44 App. Div. 8, 60 N. Y. Supp. 419, affirmed in 162 N. Y. 238, 56 N. E. 625.

It follows that the tax was improperly collected, and the plaintiff is entitled to recover it.

Counsel for the Commissioner cited numerous authorities in support of his contention, but they are, we think, distinguishable from the instant case.   We are of the opinion, upon consideration of the evidence, that the transaction outlined in the findings of fact above constituted an absolute transfer *in praesenti* of $63,000 to H. B. Smithers and that possession and enjoyment thereof vested in him immediately and were not postponed until the death of his father.